Your next case is 412-1057-WC Joseph Czernis, Appellant v. Workers' Compensation Comm'n. Decision was FLE. Mr. Simmons? Yes, Your Honor. Good afternoon. May it please the Court, Counsel. I'm John Simmons and I'm here today on behalf of the petitioner, Appellant Joseph Czernis. We're here on an odd lot disability case, Your Honor. In general, the thrust of our argument is that the Commission failed to actually consider evidence put in front of it that established that Mr. Czernis was permanently and totally disabled, instead completely bypassing the issue. And therefore, it was fundamentally against the manifest weight of the evidence to fail to consider the evidence. There's a preliminary special question let me ask you this. Do we agree there was no medical evidence that he was totally and permanently disabled? Yes, Your Honor. I do agree that there's evidence... That's out of the equation, correct? Correct, Your Honor. Yes. We'd be looking at the other two procedures by which it's usually determined, being that he either has conducted a diligent but unsuccessful job search, or that due to his age, experience, training, education, and capabilities, there's not a reasonable and continuous market for someone in this condition. As far as the job search goes, he made 19 contacts. That is correct, Your Honor. And the Commission found that was an indelible job search. And we disagree with that on two bases, Your Honor. First off, the Commission and the arbitrator who did most of the analysis on that issue and then was affirmed by the Commission, failed to take into account the geographic limitations that Mr. Czernis was under in his job search. He lived in Maridoja County. He did attempt to do a job search, not only in that county, but also in Sangamon County. In addition, while the Petitioner's Exhibit 13 only demonstrates those 19 jobs, he also testified that he had attempted to find jobs prior to his relocation to Sangamon County. I'm sorry, to Maridoja County. Excuse me about that. Secondly, they failed to take into account that there's no evidence that would suggest that this is an unreasonable result for his job search. He testified that he did cold calls, he visited places of employment, he did not limit his search to places that were advertising employment. Rather, he went to any location that he could identify that he believed he may, with regard to his age, his experience, his training, and his capabilities, be able to perform a function to that extent. And he could only come up with 19 places? Correct, Your Honor. But again... 19 places in four months, right? I believe that, yes, that would be over four months, Your Honor. In addition, there is no evidence that suggests that any of that job search is not credible. The Respondent has not presented any evidence that suggests there were more jobs available in his area that he could have or should have applied for. Nor is there any indication that he was offered any sort of alternate employment, which he turned down. And I highlight this fact because one of the cases that I mentioned in my brief, a case decided by this Court in 1984, the Boyd decision, pointed out as an important consideration, while it was granting that individual permanent total disability, when the issue of, was there a diligent job search? When that arose, they completely dismissed that issue, despite the fact that it was undisputed that that individual's job search was just calling her former employer and saying, hey, can you hire me? No? Call back in a couple of months. The quality of the job search, the diligence associated with the job search, has to be taken in a context of what is actually available to the petitioner. In this case, it's undisputed that this was the extent of the job search available to the petitioner. Moreover, I think that it is important, and it was failed to be considered, that the petitioner had been offered assistance with vocational rehabilitation and offered assistance with job search services by the respondent, that then never materialized. A woman by the name of Stephanie Powers contacted him and said, hi, I've been selected to help you with this process, to attempt to help you find alternate employment. Why don't you go ahead and give me some basic information? And then she never contacted him again. Is it true that 18 of the 19 employers he contacted weren't even hiring? I believe that that is correct. And the only job, the 19th one, he didn't meet the physical requirements for the other job? I believe that that is also correct. And again, what we would encourage the court to take from that is that he was attempting to find jobs despite the absence of blatantly and visible opportunities. He was making cold calls and they weren't in response to job openings? Correct. He didn't do anything for a year and a half after his job was terminated? Did nothing? That is also correct. But again, I believe that the context of why there was that delay is important. For the vast majority of that year and a half, he was still receiving benefits from the corporation. They were aware that he could not work. I don't think that it's reasonable to expect him to engage in a job search when he has been acknowledged by the respondent as unable to come into work. Let's talk about that for a second. Is your position that the claimant could only perform the most menial of tasks? Is that essentially your position? Because of the combination of his condition, yes, Your Honor, I believe that that is the extent of what he could perform. We've got Dr. O'Brien referring to the claimant could do sedentary work, correct? Correct, Your Honor. The results of the FCE showed he could perform late-duty work, correct? That is also correct, Your Honor. He also testified he was performing a job as a highway commissioner. He did perform that job, and I also understand that the respondent has made quite a bit of significance of that. I think that that's a red herring in this position. Well, it's not exactly a menial job, is it? No, it is not a menial job, but it's also a very special position. As a publicly elected position, that can't be considered to be a career or a regularly available line of work. No, but the type of work can be. The type of work can establish that he is capable of doing the type of work that that public job requires. Now, is there any evidence there were no such jobs available in the private sector? Administrative type jobs? The only evidence as to whether or not those jobs were available comes from his own jobs. Well, wait a minute. He applied for jobs where there were no openings. What was he supposed to get? A yes from a place where there was no openings? If he had only applied to locations that were advertising employment, then that list would only be one employer long, Your Honor. He was attempting to show the initiative of investigating deeper than just who has a sign out in their window. Whose job is it to determine how long the search has to take place or how extensive it has to be before it satisfies the requirement? In this case, it would be the commission. And they said no? Correct, Your Honor. They did say no. And they've got an awful lot of stuff in here that might support their decision. With regards to the diligence of this. I'm sorry. What, you're in half with nothing? With regards to his job search, they don't mention that delay. That's a point that's been raised by the respondent but was not actually in the decision. Well, that's going to be in the decision if it's in the facts. For your purposes. But we would have appreciated if the commission, when they made this decision, declaring his job search to have been non-diligent, would have given us a basis. Well, we'd appreciate it if they'd write a little better decisions than they do, too. But they don't. So we've got to deal with what we've got. Even if this court believes and agrees that there's not a basis to find that his job search was diligent, the court still erred by failing to consider the evidence that suggested that because of his age, training, education, and experience, he is not employable in a continuous and regular line of work. What was the evidence? First off, there is the acknowledgment that he's unable to return to his line of work as an electrician. In regards to his age, at the time of the decision, he was 54. Today, and that was, I'm sorry, the decision. The poor might seem pretty old to you. As of today, he's 65 going on 66. For his entire working career prior to this incident, he was an electrician. And it's undisputed he cannot return to being an electrician. He cannot handle the weights that are involved. He cannot handle the physical demands in terms of positioning and maneuvering within that. That is the vast majority of his experience. Again, we do acknowledge that he had a period of time where he served as the highway commissioner. But it is our position that the service as a highway commissioner cannot be considered the regular and continuous line of employment which is anticipated by the odd-lot determination. You offered no expert testimony, vocational rehab testimony. That is correct, Your Honor. Nobody did a labor market survey. That is correct, Your Honor. Nobody expressed the opinion that there was no reasonably stable labor market for him. That is correct, Your Honor. And the respondent presented no evidence to the contrary. And based on the evidence you just talked about, the commission said he has approved it. That is correct. Why is that against the manifest way of the evidence? Because the evidence actually was not considered. If you review the commission's decision, they actually moved directly into the issue of permanent partial disability. They did not address that. When you review Arbitrator Tolben's decision, which the commission affirmed and seems to have incorporated in large degree into their own decision, Arbitrator Tolben only considered the issue of is he medically permanently disabled. Arbitrator Tolben did not discuss the age, experience, training, education, and capability factors which are a valid path to establishing the odd-lot determination. In this case, all of that evidence was presented undisputed. There was no indication that despite being his age, he ought to be able to move into another line of work. There was no actual evidence given that any of his skills were transferable. All of those allegations had been made unsupported. He also testified that because of the nature of the injury to his neck, in his dominant left hand he has problems with coordination, he has problems with grip strength, which he testified specifically directly interferes with and inhibits his ability to, for example, complete paperwork. In all aspects of both of his jobs, his injury continues to be a debilitating factor which prevented him from returning to those line of work. And again, specifically with regard to the highway commission position, we cannot consider that to be a form of employment that is regular and continuous as anticipated under the odd-lot determination. It is fickle. It is subject to the whims of the voters. And in fact, when he left that position, it was not because of his choice to leave it, it was because the position terminated. I don't think anyone would suggest that because he had the job as highway commissioner that establishes that he had a job. What it does establish is he's capable of working.  However, the work that he is capable of doing does not translate into a regular and continuous form of employment. Administrative work isn't regular and continuous employment? In this case, there's no evidence in this record to suggest that that was available. But there's no evidence in this record that there weren't jobs available for him other than cold calls to people that weren't hiring. He didn't put on a vocational expert. If he put on a vocational expert to testify, there are no jobs available for this man within 500 miles that he's capable of performing with restrictions. We'd have a different case on our hands. I agree we would have a different case. I think this case is a failure of proof. I disagree with that, and there's actually, I'm sure you've noticed, a substantial portion of my brief that specifically addresses a Westin Hotel case, which was introduced by the respondent, which was also cited by the arbitrator, and has continued throughout the procedural history. And I believe that that is the case that is bringing this idea that there has to be a vocational expert. And as I've argued in my brief, I believe that that's... No, there has to be proof. Proof. There has to be proof. One way of doing it is through a vocational rehabilitation counselor. Correct. But there isn't any proof in this record that there were no jobs available to him other than he made 18 cold calls and so forth. But that evidence is also undisputed. And there's not any indication that he was found to be non-credible. The evidence... The burden doesn't shift to the employer to show that there is a reasonably stable labor market for him until the petitioner first shows that there are no jobs available. And that was shown in this case, and it was, in fact, undisputed. And I haven't even reached the concept of the burden shift. My point is that the credibility of his job search, though limited, is not disputed. It is not undermined. It is not underwritten. We know he did it. He called 19 employers, 18 of which didn't even have jobs available, so he couldn't get a job from them. And one, he didn't fit the requirements. So what kind of job search is that? He did it. Who says that that's enough? Only the commission can say it's enough. And again, I believe that in this case where there has been no indication that, by way of evidence, that his job search was inhibited, that it did not represent a full effort on his part with regard to his geographical location, with regard to the fact that for a large period of that time when he was unemployed, he was expecting assistance from vocational rehabilitation that then never manifested, making do with what he had access to. There's no indication that he could have done any better than what he did. I see my time is about to expire. Thank you. Thank you, counsel. Ms. Wolfe? Good afternoon. Jennifer Wolfe on behalf of Decision One. I'll be brief. The questions basically that the bench has issued support a lot of our fault that we find with this. Essentially, the court or the arbitrator and the commission's opinions have a lot of the facts about his age, his education, his experience. That is all in the evidence. That all must have been considered by the commission. To say that they didn't spell it out as well as petitioners would like doesn't say that it was ignored or not considered because it is in the record. The plaintiff is trying to switch the burden to the respondent. They haven't met their burden. It's not the respondent's or the employer's responsibility to disprove facts that haven't even been established. As they conceded, there is no medical evidence to show a disability. So in order to get the odd lot, we are stemming from whether he had a diligent but unsuccessful job search. There's no dispute that he did do a job search, but it was not diligent. They would like us to be able to ignore the fact that diligent is a requirement in order to switch the burden and just say any job search is warranted in order to then make the employer have to show that there could have been more cases, there could have been more jobs out there. And that's not what the burden or the law allows. So essentially, your honors, if there's no questions, we would ask that the commission's decision be approved both as to the odd lot determination and then to the permanency award. Any other questions? Okay, we may reply. I'll attempt to keep this short as counsel kept hers quite short. With regard to the job search issue, I would like to reiterate to the court that that is one of three methods that are available to establish an odd lot disability. And that even if this court finds, such as with, as we do not contest that there is medical evidence, including by our client's treating physician, that there is some degree of work that he could do if that work were available. Just as that being unavailable as an avenue to the odd lot disability, if this court determines or affirms the commission's determination that his job search was not diligent, that still does not preclude the consideration of whether or not there is a reasonable, regular, and continuous line of employment for an individual with Mr. Chernus's age, of his education, which was limited to trade school, to be an electrician, of his job experience. I don't want to repeat what Justice Stewart asked you, but could you please tell me where the evidence was that there wasn't? There was not. So if you didn't introduce any evidence that there were no jobs for a person of his age, his physical ability, his education, then what's the employer got to do? Nothing. That evidence is his testimony, and it is the Petitioner's Exhibit 13. His testimony of what? That he attempted to find a job and failed to find one. So we're not on to there's no jobs available for a person with his age disability, which would come from a vocational expert. We're back on to you did a diligent job search and didn't find a job. I believe that I see the issue differently than yourself, Your Honor. I do understand the concern that you're raising, but I believe that in order to end at your conclusion, that requires that we accept that it has to be presented by an expert in the field of vocational rehabilitation, which again, in my brief, is a point that I strongly oppose. It doesn't have to be presented by an expert, unless, of course, your theory is there is no job available for a person of his age, his expertise, within a certain geographical area. That's not something that a layman knows. Now, what a layman can decide is he did a diligent job search, he contacted 400 companies, he couldn't get a job. He doesn't need a vocational expert to testify that that was a diligent job search and he's entitled to odd lot. The Commission can do that itself. But if you're talking about there's no jobs for a person of his age, his education, his this, his that, that's a vocational expert's area. Again, in my brief, I rejected that notion. I believe that that should not be required from a vocational rehabilitation expert. He has put on evidence through his own testimony of his attempts to determine that on his own, evidence that went undisputed, unrefuted, unrebutted. His credibility was not attacked on these issues. To disregard the efforts that he put in, as well as to take those in account of the other factors, his age, his experience, et cetera, et cetera, is against the manifest weight of the evidence because there is no other conclusion that the evidence can compel, as undisputed as it is. Thank you. Thank you, Counsel. This matter has been taken under advisement. This position shall issue. We'll stand in brief recess.